# FLSA Settlement Agreement and General Release

Thomas Torosian and Torosian Tech Service, Inc. and its affiliates and subsidiaries (collectively, "Employer" or "Torosian") and Timothy Johnson ("Employee") enter into the following FLSA Settlement Agreement and General Release ("Agreement").

1.     The Complaint. On February 8, 2022, Employee filed Case No. 22-cv-154 with the Federal District Court for the Eastern District of Wisconsin (the "Complaint"). The Complaint alleges (i) violations of the overtime provisions of the Fair Labor Standards Act and (ii) violations of the agreed-upon wage and overtime provisions of Wis. Stat. Ch. 109 on behalf of Employee as well as a putative class/collective of similarly situated individuals. Employer denies any and all unlawful actions and/or liability whatsoever, specifically disclaims any wrongful acts against Employee as alleged in the Complaint or otherwise, and denies the existence of any similarly situated individuals.

2.     Final Resolution. Employee and Employer (the "Parties"), through their respective counsel, have engaged in extensive arms-length negotiations and exchanged relevant information regarding the allegations regarding Employee set out in the Complaint. Through this process, the Parties have identified a good faith dispute over the amount of wages, if any, due to Employee on an individual basis and have reached a compromise resolution intended to fully, finally, and to the greatest extent allowed by law, resolve Employee's individual claims for unpaid wages along with any and all claims and/or disputes arising out of Employee's employment or the end of that employment, including but not limited to the claims raised in the Complaint, in an amicable manner, without the difficulties and expenses involved in further litigation. Employee's obligations under this Agreement include, but are not limited to, dismissing with prejudice the Complaint and any other pending legal actions against Employer.

3.     Consideration. In consideration for signing this Agreement, not revoking his signature, and complying with its terms, Employer agrees to pay Employee the gross total amount of Thirty-Two Thousand Five Hundred Dollars and No Cents ($32,500.00) in exchange for the releases, covenants, conditions, and obligations imposed upon Employee by this Agreement (the "Total Settlement Payment"). The Total Settlement Payment shall be made as follows:

    A.     Of the Total Settlement Payment, Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) shall be classified as attorneys' fees and costs and made payable to Walcheske & Luzi, LLC. Employer will make payment via corporate check and issue appropriate IRS Form(s) 1099 in connection with this payment.

    B.     Of the Total Settlement Payment, Three Thousand, Seven Hundred and Fifty Dollars and Zero Cents ($3,750.00) shall be classified as non-wages in settlement of alleged liquidated damages, litigation costs and/or interest. Employer will make payment via corporate check and issue an IRS Form 1099 in connection with this payment.

    C.     Of the Total Settlement Payment, Three Thousand, Seven Hundred and Fifty Dollars and Zero Cents ($3,750.00) shall be classified as wages earned during the course of his employment and paid to Employee, *less ordinary tax withholding and all*

1

*required deductions*. Withholding shall be calculated using the last-filed tax withholding information submitted by Employee to Employer or backup withholding. Employer will issue an IRS Form W-2 in connection with this payment.

D.     Without regard to specific payment breakdowns described above, the Parties agree that 50% of the Total Settlement Payment shall be apportioned as consideration for the Wage Release set forth in Paragraph 6 and 50% of the Total Settlement Payment shall be apportioned as consideration for the General Release set for in Paragraph 7.A.

E.     The Total Settlement Payment shall not be deemed "compensation" for purposes of any of Employer's qualified retirement plans or other benefit programs, and payment of that consideration does not entitle Employee to any retirement plan contributions by Employer for Employee's benefit or account. Employer makes no representations or advice as to the tax consequences of any payment under this Agreement.

4.     Procedure. After this Agreement is fully-executed by the Parties, subject to Employer's review of and consent to the motion for judicial approval of the settlement, Plaintiff on behalf of the Parties will submit the Agreement the Court for the Court's consideration and approval along with a request that the Court approve the terms of the Agreement and dismiss the Complaint with prejudice and without further costs to either party except as set forth in this Agreement. The Court's approval of all provisions of this Agreement, and dismissal of the Complaint with prejudice, is a material term of this Agreement. In the event that the Court does not approve all provisions of this Agreement, the Parties will attempt in good faith to negotiate an Agreement that they believe the Court will approve and submit the revised Agreement for approval. In the event that the Parties cannot agree to a revised Agreement, then this Agreement shall be void *ab initio* and the Parties will notify the Court by requesting a status conference to continue in litigation of the Complaint.

The Total Settlement Payment shall be sent via U.S. Mail to Employee's counsel of record at 235 N. Executive Drive, Suite 240, Brookfield, WI 53005 within 30 days of the latest of the following: (i) Employer's counsel being in receipt from Employee of an original of this Agreement executed by Employee, along with a IRS Forms W-9 executed by Employee and Employee's counsel; (ii) Employee's time to revoke Employee's signature on this Agreement having expired, (iii) Employer's counsel being in receipt of notice of the Court's approval of all terms of the Agreement; and (iv) Employer's counsel being in receipt of notice of the Court dismissing the Complaint with prejudice and without further award of costs or damages, except as set forth in this Agreement.

5.     No Consideration Absent Execution of this Agreement. Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 3 above, except for Employee's execution of this Agreement, not revoking his signature on this Agreement, and the fulfillment of the promises contained herein.

6.     Wage Release. Employee, his heirs, executors, administrators, successors and assigns voluntarily release and forever discharge Thomas Torosian, Torosian Tech Service, Inc.,

2

and its current and former parent companies, subsidiaries, divisions and affiliated entities, co-employers or joint employers, and each entity's officers, directors, principals, shareholders, trustees, administrators, executors, agents, attorneys, employees, former employees, insurers, reinsurers, predecessors, successors and assigns, in their individual and official capacities (collectively referred to throughout the remainder of this Agreement as "Releasees"; along with Employer, the "Released Parties") of and from any wage or overtime claims relating to or arising out of Employee's employment with Employer which they may have against Employer or any Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of: the Fair Labor Standards Act, 29 U.SC. § 201 *et seq.*; any Wisconsin wage payment claims; and any other claim relating to unpaid wages, any claim for costs, fees, or other expenses, including attorneys' fees pertaining to such claims, based upon any conduct occurring from the beginning of time up to and including the date of Employee's execution of this Agreement.

7.     General Release, Claims Not Released and Related Provisions.

A.     General Release of All Claims.    Employee his heirs, executors, administrators, successors and assigns, knowingly and voluntarily releases and forever discharges Thomas Torosian, Torosian Tech Service, Inc., and the Releasees of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against any of the Released Parties as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (as modified below);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act, the Emergency Family and Medical Expansion Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Age Discrimination in Employment Act of 1967;

- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- The Wisconsin Fair Employment Act, Wis. Stat. § 111.31 *et seq.*;
- The Wisconsin Disability Discrimination Act, Wis. Stat. § 111.34 *et seq.*;
- The Wis. Family or Medical Leave Act, Wis. Stat. § 103.10 *et seq.*;
- The Wisconsin Minimum Wage Act, Wis. Stat. § 104.001 *et seq.*;
- The Wisconsin Wage Payments, Claims, and Collections Act, Wis. Stat. § 109.01 *et seq.*;
- any other federal, state or local law, rule, regulation, or ordinance
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including

3

attorneys' fees incurred in these                    matters.

B.    Claims Not Released.  Employee is not waiving any rights he may have to: (a) Employee's own vested accrued employee benefits, if any, under Employer's health, welfare, or retirement benefit plans as of Employee's final date of employment; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

C.    Governmental Agencies.  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board or a similar agency enforcing federal, state or local anti-discrimination laws, to the extent that such right to file is not subject to waiver.  However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made to such an anti-discrimination agency, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.  In the event that Employee files a charge or complaint with the Wisconsin Department of Workforce Development Equal Rights Division, Employee acknowledges and agrees that such charge or complaint shall be dismissed prior to the completion of an investigation pursuant to Wis. Admin. Code § DWD 218.06(3)2.

D.    Collective/Class Action & Jury Waiver.  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any Releasee is a party.  Similarly, as to any such claim against any Released Party that is not otherwise released, Employee waives Employee's right to a jury trial subject to applicable law.

8.    Acknowledgments and Affirmations.

A.    Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Employer other than the Complaint or a claim for unemployment compensation.

B.    Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.  Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law;

4

or (b) is made to Employee's attorney in relation to a lawsuit for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

C.     Employee affirms that Employee has returned all of Employer's property, documents, and/or information in Employee's possession or control.

9.     Tax Indemnification.  Employee agrees to indemnify and hold the Released Parties harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Released Parties in connection with such governmental authority's determination that Employer or any of the other Released Parties was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made pursuant to Paragraph 3 of this Settlement Agreement.  Employee agrees that Employee shall indemnify the Released Parties for the full amount of such liability within thirty days after receipt of notice from Employer or any of the Released Parties of the assessment of such taxes, penalties or interest.  Employee further agrees to notify Employer promptly and reasonably cooperate with Employer in the defense of any claim or issue raised by any governmental authority with respect to the payment made under Paragraph 3 above.

10.     No Future Relationship.  Employee acknowledges that he has no right to any future employment with Employer, or their related entities, successors, or assigns.  Employee covenants not to apply for or seek employment with Employer, or their related entities, successors, or assigns.  Any applications for future employment submitted by Employee will be denied based solely on the terms of this Agreement and no other reason(s) shall be attributed for such denial.  The Parties agree that this Paragraph is a negotiated, non-discriminatory, and non-retaliatory term of this Agreement.

11.     Neutral Reference.  Employer agrees that if a future or prospective employer of Employee contacts Employer, Employer shall offer a neutral reference by verifying only Employee's dates of employment at Employer and his last position held.  The obligation set forth in the previous sentence shall apply only to references directed to Marilyn Mullins at (207) 439-4771 or mmullins@torosiantech.com.

12.     Successors.  This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, Employee, Employer, and their respective heirs, beneficiaries, insurers, administrators, representatives, executors, successors and assignees.

13.     Governing Law and Interpretation.  This Agreement shall be governed and conformed in accordance with the laws of the State of Wisconsin, without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.    Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.  This Agreement is the product of joint drafting and negotiation between the Parties.  Accordingly, the Parties agree that any principle of construction or rule of law that provides that, in the event of any inconsistency or

5

ambiguity, an agreement shall be construed against the drafter of the agreement shall have no application to the terms and conditions of this Agreement.

14. <u>Nonadmission of Wrongdoing</u>. The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by the Released Parties of wrongdoing or evidence of any liability or unlawful conduct of any kind.

15. <u>Amendment</u>. This Agreement may not be modified, altered, or changed except in a writing that is hand-signed by both Parties wherein specific reference is made to this Agreement.

16. <u>Miscellaneous.</u> This Agreement may be executed in counterparts, which may be exchanged by mail, courier, facsimile, email, or other electronic form of transmission. When each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement.

17. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

18. <u>Headings Descriptive Only.</u> Descriptive headings are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY EMPLOYEE'S COUNSEL WALCHESKE & LUZI, LLC, AND SO DOING, ENTERS INTO THIS AGREEMENT.**

**EMPLOYEE MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH EMPLOYEE SIGNS THIS AGREEMENT. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO MARILYN MULLINS AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT." THE REVOCATION MUST BE RECEIVED MARILYN MULLINS AT PO BOX 8243, PORTSMOUTH, NH 03802-8243 OR HIS/HER DESIGNEE WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT.**

**COMPLAINANT AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN**

6

**ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**TIMOTHY JOHNSON**

Timothy C Johnson
_____
Signature

11/06/2022
_____
Date

**THOMAS TOROSIAN**

_____
Signature

_____
Date

**TOROSIAN TECH SERVICE, INC.**

_____
Signature

_____
Print Name

_____
Title

_____
Date

4821-8185-7981, v. 1

7

**ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**TIMOTHY JOHNSON**

_____
Signature

_____
Date

**THOMAS TOROSIAN**

_Thomas J. Torosian_____
Signature

_11/4/22_____
Date

**TOROSIAN TECH SERVICE, INC.**

_Thomas J. Torosian_____
Signature

_THOMAS  J.  TOROSIAN_____
Print Name

_Owner_____
Title

_11/4/22_____
Date

4821-8185-7981, v. 1

7